UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x
                                      :
UNITED STATES OF AMERICA              :        SEALED
                                               INDICTMENT
        -v-                           :
                                      :        S1 12 Cr. 171 (JPO)
MIKHAIL ZEMLYANSKY,                   :
        a/k/a "Mike Zemlin,"          :
        a/k/a "Russian Mike,"         :
        a/k/a "Mike Z,"               :
        a/k/a "Zem,"
MICHAEL DANILOVICH,                   :
        a/k/a "Mike Daniels,"
        a/k/a "Fat Mike,"             :
        a/k/a "Mike D,"
YURIY ZAYONTS,                        :
        a/k/a "KGB,"
MIKHAIL KREMERMAN,                    :
MATTHEW CONROY,
MICHAEL BARUKHIN,                     :
        a/k/a "Barkin,"
        a/k/a "Mike B,"               :
MIKHAIL OSTRUMSKY,
        a/k/a "Skinny Mike,"          :
BORIS TREYSLER,
        a/k/a "Borya,"                :
ANDREY ANIKEYEV,
VLADIMIR GRINBERG,                    :
VLADISLAV ZARETSKIY,
YEVGENIY SHUMAN,                      :
        a/k/a "Eugene,"
        a/k/a "Lokh,"                 :
        a/k/a "Zhenya,"
DMITRY SLOBODYANSKY,                  :
        a/k/a "Dima,"
ALEXANDER SANDLER,                    :
        a/k/a "Sasha,"
        a/k/a "Nose,"                 :
GREGORY MIKHALOV,
MICHAEL MORGAN,                       :
MARK DANILOVICH,
JEFFREY LEREAH,                       :
DMITRY LIPIS,
        a/k/a "Dima,"                 :
        a/k/a "Danny,"
LYNDA TADDER,                         :
MARIA DIGLIO,
SOL NAIMARK,                          :
SERGEY GABINSKY,
TATYANA GABINSKAYA,                   :

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 2 8 2012

```
JOSEPH VITOULIS,
LAURETTA GRZEGORCZYK,                    :
     a/k/a "Dr. G,"
EVA GATEVA,                              :
ZUHEIR SAID,
DAVID THOMAS,                            :
     a/k/a "David Sanni Thomas,"
BILLY GERIS,                             :
MARK SHAPIRO,
ROBERT DELLA BADIA,                      :
MICHELLE GLICK,
PAVEL POZNANSKY,                         :
     a/k/a "Paul,"
CHAD GREENSHNER, and                     :
CONSTANTINE VOYTENKO,
                                         :
          Defendants.
- - - - - - - - - - - - - - - - -x
```

## COUNT ONE

(Racketeering Conspiracy)

The Grand Jury charges:

### The Enterprise

1.    At all times relevant to this Indictment, MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a "Russian Mike," a/k/a "Mike Z," a/k/a "Zem," MICHAEL DANILOVICH, a/k/a "Mike Daniels," a/k/a "Fat Mike," a/k/a "Mike D," YURIY ZAYONTS, a/k/a "KGB," MIKHAIL KREMERMAN, MATTHEW CONROY, MICHAEL BARUKHIN, a/k/a "Barkin," a/k/a "Mike B," MIKHAIL OSTRUMSKY, a/k/a "Skinny Mike," BORIS TREYSLER, a/k/a "Borya," the defendants, and others known and unknown, were members and associates of the No-Fault Organization (or the "Organization"). The No-Fault Organization was a criminal organization consisting primarily of individuals of Russian descent in the United States participating in

organized criminal activities, whose members and associates engaged in various crimes, including a scheme to defraud automobile insurance companies that provide health care benefits to accident victims of more than $275 million, mail fraud and money laundering.

2.    The No-Fault Organization, including its leadership, membership, and associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1961(4) -- that is, a group of individuals associated in fact.  This enterprise was engaged in, and its activities affected, interstate and foreign commerce.  The No-Fault Organization was an enterprise centered in New York City, including in the Southern District of New York.  The No-Fault Organization constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

### THE NO-FAULT INSURANCE FRAUD SCHEME

3.    At all times relevant to this Indictment, New York State Law required every vehicle registered in New York State to have no-fault automobile insurance, which enabled the driver and passengers of a vehicle registered and insured in New York State to obtain benefits of up to $50,000 per person for injuries sustained in an automobile accident, regardless of fault (the "No-Fault Law").  The No-Fault Law required payments for medical

treatments to be made promptly, thereby obviating the need for vehicle occupants (the "Patients") to file personal injury lawsuits in order to be reimbursed for medical treatment. Under the No-Fault Law, the Patients could assign their right to reimbursement from an insurance company to others, including, but not limited to, medical clinics that provided medical services to treat their injuries. If such an assignment were made, the medical clinics, or their agents, would bill the insurance company directly for services rendered and received payments directly from the insurance company. Typically, insurance companies compensate the medical practitioners at a fixed rate for various medical services performed on these accident victims. In order to obtain damages separate and apart from the $50,000 allowed by the No-Fault Law, a Patient could file a personal injury claim and/or lawsuit in order to show that the occupant sustained a "serious injury," as defined by New York State Law, as a result of the accident.

4.   In order to take advantage of the patient-friendly provisions of the No-Fault Law, numerous medical clinics were created solely to defraud insurance companies under the No-Fault Law (the "No-Fault Clinics"). While purporting to be legitimate medical care clinics specializing in treating the Patients, the No-Fault Clinics were, in fact, medical fraud mills that routinely billed automobile insurance companies under the No-

Fault Law for medical treatments that were either (i) never provided and/or (ii) unnecessary, because the Patients did not medically need the treatments.

5.    At all times relevant to this Indictment, pursuant to New York State Law, all medical clinics in New York State must have been incorporated, owned, operated, and/or controlled by a licensed medical practitioner in order to be eligible for reimbursement under the No-Fault Law.  Insurance companies would deny all billings for medical treatments from a medical clinic that was not actually owned, operated and controlled by a licensed medical practitioner.

6.    In actuality, the No-Fault Clinics were not owned, operated, and controlled by a licensed medical practitioner; instead, the actual owners, operators, and controllers of the No-Fault Clinics were individuals who were not licensed medical practitioners and who were not identified on documents filed with New York State authorities (the "No-Fault Clinic Controllers"). The No-Fault Clinic Controllers, among other things, paid a fee and/or salary to licensed medical professionals (the "No-Fault Doctors") so that the No-Fault Doctors would (1) incorporate a professional corporation under which a No-Fault Clinic could bill insurance companies; (2) open a bank account for the Clinic; (3) sign the lease for the Clinic property; (4) sign the Clinic's bills for treatments under the No-Fault Law; and/or (5) make the

excessive and unnecessary prescriptions and referrals for additional treatments and medical supplies to other fraudulent medical clinics. In addition, the No-Fault Clinic Controllers, among other things, invested the initial funds to establish the No-Fault Clinics; identified the locations for the Clinics; negotiated the rent for the Clinics' leases; sourced and paid for the Clinics' equipment; arranged for Patients to receive treatment; and/or received most, if not all, of any proceeds from the No-Fault Clinics.

7.    Furthermore, the No-Fault Clinic Controllers arranged for other similarly fraudulently incorporated entities to provide excessive and unnecessary medical treatments based on referrals from the No-Fault Doctors (the "Modality Clinics"). The Modality Clinics provided additional medical treatments and supplies, which were fraudulently billed to the automobile insurance companies. These additional treatments included, but were not limited to, acupuncture, chiropractic medicine, physical therapy, neurology, psychology, magnetic resonance imagings ("MRIs"), x-rays, range of motion, outcome assessment, functional capacity, pain management, orthopedics, audiology, manipulation under anesthesia ("MUA"), and durable medical equipment ("DME"), among others. In return, the No-Fault Clinic Controllers received cash kickbacks for each referral from other individuals who fraudulently owned, operated and controlled the Modality

Clinics (the "Modality Clinic Controllers"). Similar to the No-Fault Clinics, many of the Modality Clinics were fraudulently incorporated by licensed medical practitioners who did not own, operate and/or control the Modality Clinics (the "Modality Professionals").

8.    In order to increase the number of medical treatments that could be billed to automobile insurance companies and referred to Modality Clinics, the No-Fault Clinic Controllers used individuals who recruited Patients to the No-Fault Clinics (the "Runners"). The No-Fault Clinic Controllers generally paid the Runners between $2,000 and $3,000 per Patient referral. The amount of the cash kickback depended on the quality of the police accident report and the ease of reimbursement by the insurance company. Often, the Runners coached the Patients about which fake injuries they should claim to the No-Fault Doctors in order to support additional treatments.

9.    The No-Fault Clinic Controllers also referred the Patients to personal injury lawyers (the "Lawyers") so that the Lawyers could file personal injury claims and lawsuits on behalf of the Patients to obtain additional funds separate and apart from the $50,000 available to each Patient under the No-Fault Law. In return, the Lawyers and the No-Fault Clinic Controllers entered into kickback arrangements, which included, but were not limited to, a common arrangement in which the Lawyers paid

approximately $1,000 for each patient referral from a No-Fault Clinic Controller.  Often, the Lawyers encouraged the Patients to receive more treatments to support their personal injury cases.

<u>THE MONEY LAUNDERING SCHEME</u>

10.  In order to maintain and promote the operation of the No-Fault Organization, the No-Fault Clinic Controllers and Modality Controllers (collectively, the "Clinic Controllers") continuously reinvested a portion of the proceeds of the no-fault fraud scheme back into the scheme.  Generally, criminal proceeds in the form of checks were mailed from automobile insurance companies to the Clinic Controllers and then deposited into the bank accounts of the No-Fault Clinics and the Modality Clinics (the "No-Fault Clinic Accounts" and the "Modality Clinic Accounts," respectively, and collectively, the "Clinic Accounts").  Although the signatories on the Clinic Accounts were the No-Fault Doctors and Modality Professionals who had incorporated the professional corporations for the No-Fault Clinics and Modality Clinics, the Clinic Accounts were actually controlled by the Clinic Controllers.  The Clinic Controllers paid fees and salaries to the No-Fault Doctors and Modality Professionals from the Clinic Accounts for their role in the no-fault insurance scheme.

11.  In addition, as described above, the Modality Clinic Controllers paid kickbacks to the No-Fault Clinic

Controllers in return for Patient referrals.  The Modality Clinic Controllers paid a portion of the kickback money to the No-Fault Clinic Controllers by providing checks to the No-Fault Clinic Accounts that were often falsely characterized as "rent" payments for the use of space at the No-Fault Clinics by the Modality Clinics.  These "rent" checks had the dual purpose of satisfying some of the monies owed for kickbacks and also falsely representing to the automobile insurance companies that the business relationship between the No-Fault Clinics and the Modality Clinics was legitimate.  Additionally, other expenses of the No-Fault Clinics were sometimes paid by check directly from the Modality Clinic Accounts as an additional means of making kickback payments to the No-Fault Clinic Controllers.  Finally, on some occasions, the Modality Clinic Controllers paid a portion of the kickbacks owed to the No-Fault Clinics Controllers by structuring checks of less than $10,000 to the No-Fault Clinic Controllers, who, among other things, provided some of these checks to check cashers to convert to cash, as described in more detail below.

      12.  In order to generate cash from the scheme to satisfy their various kickback obligations, the Clinic Controllers often used check cashers in order both to conceal the source of the proceeds and to reinvest the proceeds into the scheme.  Often, the Clinic Controllers wrote blank checks from

the Clinic Accounts in amounts structured to be less than $10,000 to avoid financial reporting requirements, and provided those checks to individuals who would cash the checks with a check casher for up to a 10 percent fee. The check cashers would then return the remainder of the funds in cash to the Clinic Controllers. The Modality Clinic Controllers then used this cash to pay the No-Fault Clinic Controllers to satisfy the monies owed for Patient referrals, and, in turn, the No-Fault Clinic Controllers paid the Runners in cash for referring Patients to the No-Fault Clinics.

13. In addition, the Clinic Controllers extracted proceeds of the scheme by concealing the source of those proceeds. First, after depositing checks from automobile insurance companies into the Clinic Accounts, the Clinic Controllers used some of those funds to pay for various personal expenses, including, among other things, jewelry, limousines, and luxury goods. Second, the Clinic Controllers directed checks to be written from the Clinic Accounts to certain shell companies controlled by the Clinic Controllers (the "Controller Shell Companies"). Money from the Controller Shell Companies would then be used to pay for various personal expenses including, among other things, car payments, credit card bills, and lavish vacations. Third, as described above, the Clinic Controllers

used check cashers to convert proceeds of the scheme into cash, some of which they kept.

## THE NO-FAULT ORGANIZATION

14.  The No-Fault Organization consisted primarily, though not exclusively, of both No-Fault Clinic Controllers and Modality Clinic Controllers who engaged in a widespread scheme to defraud the state of New York and automobile insurance companies, and who then laundered the proceeds of their scheme, in part, to conceal their illegal conduct and to promote the scheme.  The No-Fault Organization operated principally, though not exclusively, through two primary operating branches, both of which engaged in criminal conduct including, but not limited to, mail fraud and money laundering.  One operating branch was organized and directed by MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a "Russian Mike, a/k/a "Mike Z," a/k/a "Zem," and MICHAEL DANILOVICH, a/k/a "Mike Daniels," a/k/a "Fat Mike," a/k/a "Mike D," the defendants.  The second operating branch was organized and directed by YURIY ZAYONTS, a/k/a "KGB," and MIKHAIL KREMERMAN, the defendants.  These operating branches intertwined and overlapped, both directly and through intermediaries, including other members and associates of the No-Fault Organization, as described in more detail below.  Each operating branch owned, operated and controlled multiple No-Fault Clinics and many Modality Clinics, all of which submitted their medical

11

bills to automobile insurance companies through other entities they controlled.  Both operating branches also laundered the proceeds of the scheme through shell companies, structured checks, and check cashers.

<u>The Defendants</u>

15.  At various times relevant to this Indictment, MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a "Russian Mike, a/k/a "Mike Z," a/k/a "Zem," and MICHAEL DANILOVICH, a/k/a "Mike Daniels," a/k/a "Fat Mike," a/k/a "Mike D," the defendants, were leaders and organizers of the No-Fault Organization who participated and profited from various crimes, including mail fraud and money laundering.  In this capacity, among other things, ZEMLYANSKY and DANILOVICH were No-Fault Clinic Controllers of multiple medical clinics located in and around Brooklyn, New York, which referred Patients to other Modality Clinics.  Some of the Modality Clinics were owned, operated, and controlled by ZEMLYANSKY and DANILOVICH, among others, and others were owned, operated and controlled by YURIY ZAYONTS, a/k/a "KGB," and MIKHAIL KREMERMAN, the defendants, among others.  In addition, along with other members and associates of the No-Fault Organization, ZEMLYANSKY and DANILOVICH were Modality Controllers for two MRI clinics in Brooklyn, New York, as well as for numerous acupuncture and chiropractic clinics in and around New York City.  Along with others, ZEMLYANSKY and DANILOVICH operated

entities through which they billed automobile insurance companies
for medical treatments performed by their own No-Fault Clinics
and Modality Clinics, as well as Modality Clinics controlled by
others.  Along with other members and associates of the No-Fault
Organization, ZEMLYANSKY and DANILOVICH also laundered the
proceeds of their criminal activity to conceal the source of
their proceeds, promote the no-fault insurance scheme, and
extract profits from the scheme.

    16.  At various times relevant to this Indictment,
YURIY ZAYONTS, a/k/a "KGB," and MIKHAIL KREMERMAN, the
defendants, were leaders and organizers of the No-Fault
Organization who participated and profited from various crimes,
including mail fraud and money laundering.  In this capacity,
among other things, ZAYONTS and KREMERMAN owned, operated and
controlled numerous medical clinics located in and around New
York City, including, among others, No-Fault Clinics and numerous
fraudulent neurology clinics.  These neurology clinics received
Patient referrals from, among others, No-Fault Clinics owned,
operated, and controlled by MIKHAIL ZEMLYANSKY, a/k/a "Mike
Zemlin," a/k/a "Russian Mike, a/k/a "Mike Z," a/k/a "Zem," and
MICHAEL DANILOVICH, a/k/a "Mike Daniels," a/k/a "Fat Mike," a/k/a
"Mike D," the defendants, in return for cash kickbacks.  Along
with others, ZAYONTS and KREMERMAN operated an entity through
which they billed automobile insurance companies for medical

treatments performed by their own No-Fault Clinics and Modality Clinics, as well as Modality Clinics controlled by others. In addition, along with other members and associates of the No-Fault Organization, ZAYONTS and KREMERMAN laundered the proceeds of their criminal activity to conceal the source of their proceeds, promote the no-fault insurance scheme, and extract profits from the scheme.

17. At various times relevant to this Indictment, MATTHEW CONROY, the defendant, a licensed attorney, was a member of the No-Fault Organization. In this capacity, CONROY, among other things, consulted, advised, and directed MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a "Russian Mike, a/k/a "Mike Z," a/k/a "Zem," MICHAEL DANILOVICH, a/k/a "Mike Daniels," a/k/a "Fat Mike," a/k/a "Mike D," YURIY ZAYONTS, a/k/a "KGB," and MIKHAIL KREMERMAN, the defendants, on various aspects of their criminal activity. In addition, CONROY participated in laundering the proceeds of the Organization's criminal activity.

18. At various times relevant to this Indictment, MICHAEL BARUKHIN, a/k/a "Mike B," a/k/a "Barkin," the defendant, was an associate and financial partner of MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a "Russian Mike, a/k/a "Mike Z," a/k/a "Zem," and MICHAEL DANILOVICH, a/k/a "Mike Daniels," a/k/a "Fat Mike," a/k/a "Mike D," the defendants, in various criminal activity including mail fraud and money laundering. Among other

things, BARUKHIN was principally responsible for handling the medical billing and collections for the various clinics he owned, operated and controlled with ZEMLYANSKY and DANILOVICH.

      19.  At various times relevant to this Indictment, MIKHAIL OSTRUMSKY, a/k/a "Skinny Mike," and BORIS TREYSLER, "Borya," the defendants, were members of the No-Fault Organization.  In this capacity, OSTRUMSKY and TREYSLER owned, operated and controlled multiple No-Fault Clinics, and referred Patients to Modality Clinics owned, operated and controlled by MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a "Russian Mike," a/k/a "Mike Z," a/k/a "Zem," and MICHAEL DANILOVICH, a/k/a "Mike Daniels," a/k/a "Fat Mike," a/k/a "Mike D," the defendants, among others, in return for cash kickbacks.  In addition, OSTRUMSKY and TREYSLER laundered the proceeds of their criminal activity.

<u>Purposes of the Enterprise</u>

      20.  The purposes of the enterprise included the following:

      a.  Enriching the leaders, members, and associates of the enterprise through fraud.

      b.  Promoting, protecting and concealing the proceeds of the enterprise's illegal activities through money laundering.

<u>The Racketeering Conspiracy</u>

21.  From at least in or about 2007, up to and including on or about the date of this Indictment, MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a "Russian Mike," a/k/a "Mike Z," a/k/a "Zem," MICHAEL DANILOVICH, a/k/a "Mike Daniels," a/k/a "Fat Mike," a/k/a "Mike D," YURIY ZAYONTS, a/k/a "KGB," MIKHAIL KREMERMAN, MATTHEW CONROY, MICHAEL BARUKHIN, a/k/a "Barkin," a/k/a "Mike B," MIKHAIL OSTRUMSKY, a/k/a "Skinny Mike," and BORIS TREYSLER, a/k/a "Borya," the defendants, and others known and unknown, being persons employed by and associated with the racketeering enterprise described in Paragraphs 1 through 20 above, namely, the No-Fault Organization, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section 1962(c), to wit, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), and as set forth below in paragraph 22.  ZEMLYANSKY, DANILOVICH, ZAYONTS, KREMERMAN, CONROY, BARUKHIN, OSTRUMSKY, and TREYSLER, the defendants, each agreed that he or a co-conspirator would commit at least two acts

of racketeering activity in the conduct of the affairs of the
enterprise.

The Pattern of Racketeering

22.   The pattern of racketeering activity, as defined
in Title 18, United States Code, Sections 1961(1) and 1961(5),
through which MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a
"Russian Mike," a/k/a "Mike Z," a/k/a "Zem," MICHAEL DANILOVICH,
a/k/a "Mike Daniels," a/k/a "Fat Mike," a/k/a "Mike D," YURIY
ZAYONTS, a/k/a "KGB," MIKHAIL KREMERMAN, MATTHEW CONROY, MICHAEL
BARUKHIN, a/k/a "Barkin," a/k/a "Mike B," MIKHAIL OSTRUMSKY,
a/k/a "Skinny Mike," and BORIS TREYSLER, a/k/a "Borya," the
defendants, and their co-conspirators agreed to conduct and
participate in the conduct of the affairs of the enterprise
consisted of multiple acts indictable under the following
statutes:

(a) Mail fraud, in violation of Title 18, United
States Code, Section 1341; and

(b) Money laundering, in violation of Title 18,
United States Code, Sections 1956 and 1957.

(Title 18, United States Code, Section 1962(d).)

COUNT TWO

(Health Care Fraud Conspiracy)

The Grand Jury further charges:

23.   The allegations set forth in paragraphs 1 through

17

13 of this Indictment are re-alleged as if fully set forth herein.

24.   From at least in or about 2007, up to and including on or about the date of this Indictment, MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a "Russian Mike," a/k/a "Mike Z," a/k/a "Zem," MICHAEL DANILOVICH, a/k/a "Mike Daniels," a/k/a "Fat Mike," a/k/a "Mike D," YURIY ZAYONTS, a/k/a "KGB," MIKHAIL KREMERMAN, MATTHEW CONROY, MICHAEL BARUKHIN, a/k/a "Barkin," a/k/a "Mike B," MIKHAIL OSTRUMSKY, a/k/a "Skinny Mike," BORIS TREYSLER, a/k/a "Borya," ANDREY ANIKEYEV, VLADIMIR GRINBERG, VLADISLAV ZARETSKIY, YEVGENIY SHUMAN, a/k/a "Eugene," a/k/a "Lokh," a/k/a "Zhenya," DMITRY SLOBODYANSKY, a/k/a "Dima," ALEXANDER SANDLER, a/k/a "Sasha," a/k/a "Nose," GREGORY MIKHALOV, MICHAEL MORGAN, MARK DANILOVICH, JEFFREY LEREAH, DMITRY LIPIS, a/k/a "Dima," a/k/a "Danny," LYNDA TADDER, MARIA DIGLIO, SOL NAIMARK, SERGEY GABINSKY, TATYANA GABINSKAYA, JOSEPH VITOULIS, LAURETTA GRZEGORCZYK, a/k/a "Dr. G," EVA GATEVA, ZUHEIR SAID, DAVID THOMAS, a/k/a "David Sanni Thomas," BILLY GERIS, MARK SHAPIRO, ROBERT DELLA BADIA, MICHELLE GLICK, PAVEL POZNANSKY, a/k/a "Paul," CHAD GREENSHNER, and CONSTANTINE VOYTENKO, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to to violate Title 18, United States Code, Section 1347.

25.  It was part and an object of the conspiracy that
MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a "Russian Mike,"
a/k/a "Mike Z," a/k/a "Zem," MICHAEL DANILOVICH, a/k/a "Mike
Daniels," a/k/a "Fat Mike," a/k/a "Mike D," YURIY ZAYONTS, a/k/a
"KGB," MIKHAIL KREMERMAN, MATTHEW CONROY, MICHAEL BARUKHIN, a/k/a
"Barkin," a/k/a "Mike B," MIKHAIL OSTRUMSKY, a/k/a "Skinny Mike,"
BORIS TREYSLER, a/k/a "Borya," ANDREY ANIKEYEV, VLADIMIR
GRINBERG, VLADISLAV ZARETSKIY, YEVGENIY SHUMAN, a/k/a "Eugene,"
a/k/a "Lokh," a/k/a "Zhenya," DMITRY SLOBODYANSKY, a/k/a "Dima,"
ALEXANDER SANDLER, a/k/a "Sasha," a/k/a "Nose," GREGORY MIKHALOV,
MICHAEL MORGAN, MARK DANILOVICH, JEFFREY LEREAH, DMITRY LIPIS,
a/k/a "Dima," a/k/a "Danny," LYNDA TADDER, MARIA DIGLIO, SOL
NAIMARK, SERGEY GABINSKY, TATYANA GABINSKAYA, JOSEPH VITOULIS,
LAURETTA GRZEGORCZYK, a/k/a "Dr. G," EVA GATEVA, ZUHEIR SAID,
DAVID THOMAS, a/k/a "David Sanni Thomas," BILLY GERIS, MARK
SHAPIRO, ROBERT DELLA BADIA, MICHELLE GLICK, PAVEL POZNANSKY,
a/k/a "Paul," CHAD GREENSHNER, and CONSTANTINE VOYTENKO, the
defendants, and others known and unknown, willfully and
knowingly, would and did execute and attempt to execute a scheme
and artifice to defraud a health care benefit program, and to
obtain, by means of false and fraudulent pretenses,
representations, and promises, money and property owned by, and
under the custody and control of a health care benefit program in
connection with the delivery of and payment for health care

benefits, items and services, in violation of Title 18, United
States Code, Section 1347.

(Title 18, United States Code, Section 1349).

<u>COUNT THREE</u>

(Conspiracy to Commit Mail Fraud)

The Grand Jury further charges:

26.  The allegations contained in paragraphs 1 through
13 are realleged and incorporated herein by reference.

27.  From at least in or about 2007, up to and
including on or about the date of this Indictment, MIKHAIL
ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a "Russian Mike," a/k/a
"Mike Z," a/k/a "Zem," MICHAEL DANILOVICH, a/k/a "Mike Daniels,"
a/k/a "Fat Mike," a/k/a "Mike D," YURIY ZAYONTS, a/k/a "KGB,"
MIKHAIL KREMERMAN, MATTHEW CONROY, MICHAEL BARUKHIN, a/k/a
"Barkin," a/k/a "Mike B," MIKHAIL OSTRUMSKY, a/k/a "Skinny Mike,"
BORIS TREYSLER, a/k/a "Borya," ANDREY ANIKEYEV, VLADIMIR
GRINBERG, VLADISLAV ZARETSKIY, YEVGENIY SHUMAN, a/k/a "Eugene,"
a/k/a "Lokh," a/k/a "Zhenya," DMITRY SLOBODYANSKY, a/k/a "Dima,"
ALEXANDER SANDLER, a/k/a "Sasha," a/k/a "Nose," GREGORY MIKHALOV,
MICHAEL MORGAN, MARK DANILOVICH, JEFFREY LEREAH, DMITRY LIPIS,
a/k/a "Dima," a/k/a "Danny," LYNDA TADDER, MARIA DIGLIO, SOL
NAIMARK, SERGEY GABINSKY, TATYANA GABINSKAYA, JOSEPH VITOULIS,
LAURETTA GRZEGORCZYK, a/k/a "Dr. G," EVA GATEVA, ZUHEIR SAID,
DAVID THOMAS, a/k/a "David Sanni Thomas," BILLY GERIS, MARK

SHAPIRO, ROBERT DELLA BADIA, MICHELLE GLICK, PAVEL POZNANSKY, a/k/a "Paul," CHAD GREENSHNER, and CONSTANTINE VOYTENKO, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other, to violate Title 18, United States Code, Section 1341.

28.    It was part and an object of the conspiracy that MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a "Russian Mike," a/k/a "Mike Z," a/k/a "Zem," MICHAEL DANILOVICH, a/k/a "Mike Daniels," a/k/a "Fat Mike," a/k/a "Mike D," YURIY ZAYONTS, a/k/a "KGB," MIKHAIL KREMERMAN, MATTHEW CONROY, MICHAEL BARUKHIN, a/k/a "Barkin," a/k/a "Mike B," MIKHAIL OSTRUMSKY, a/k/a "Skinny Mike," BORIS TREYSLER, a/k/a "Borya," ANDREY ANIKEYEV, VLADIMIR GRINBERG, VLADISLAV ZARETSKIY, YEVGENIY SHUMAN, a/k/a "Eugene," a/k/a "Lokh," a/k/a "Zhenya," DMITRY SLOBODYANSKY, a/k/a "Dima," ALEXANDER SANDLER, a/k/a "Sasha," a/k/a "Nose," GREGORY MIKHALOV, MICHAEL MORGAN, MARK DANILOVICH, JEFFREY LEREAH, DMITRY LIPIS, a/k/a "Dima," a/k/a "Danny," LYNDA TADDER, MARIA DIGLIO, SOL NAIMARK, SERGEY GABINSKY, TATYANA GABINSKAYA, JOSEPH VITOULIS, LAURETTA GRZEGORCZYK, a/k/a "Dr. G," EVA GATEVA, ZUHEIR SAID, DAVID THOMAS, a/k/a "David Sanni Thomas," BILLY GERIS, MARK SHAPIRO, ROBERT DELLA BADIA, MICHELLE GLICK, PAVEL POZNANSKY, a/k/a "Paul," CHAD GREENSHNER, and CONSTANTINE VOYTENKO, the defendants, and others known and unknown, willfully and

knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice and attempting so to do, would and did place in a post office and authorized depository for mail matter, a matter and thing to be sent and delivered by the Postal Service, and would and did take and receive therefrom, such matter and thing, and would and did cause to be delivered by mail according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, a matter or thing, in violation of Title 18, United States Code, Section 1341.

(Title 18, United States Code, Section 1349).

## COUNT FOUR

(Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

29.   The allegations contained in paragraphs 1 through 13 are realleged and incorporated herein by reference.

30.   From in or about 2007, up through and including in or about the date of this Indictment, in the Southern District of New York and elsewhere, MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a "Russian Mike," a/k/a "Mike Z," a/k/a "Zem," MICHAEL DANILOVICH, a/k/a "Mike Daniels," a/k/a "Fat Mike," a/k/a "Mike D," YURIY ZAYONTS, a/k/a "KGB," MIKHAIL KREMERMAN, MATTHEW

CONROY, MICHAEL BARUKHIN, a/k/a "Barkin," a/k/a "Mike B," MIKHAIL
OSTRUMSKY, a/k/a "Skinny Mike," BORIS TREYSLER, a/k/a "Borya,"
ANDREY ANIKEYEV, VLADIMIR GRINBERG, VLADISLAV ZARETSKIY, YEVGENIY
SHUMAN, a/k/a "Eugene," a/k/a "Lokh," and DMITRY SLOBODYANSKY,
a/k/a "Dima," the defendants, and others known and unknown,
willfully and knowingly did combine, conspire, confederate, and
agree together and with each other to commit offenses against the
United States, to wit, to violate Title 18, United States Code,
Section 1956.

       31.  It was a part and an object of the conspiracy that
MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a "Russian Mike,"
a/k/a "Mike Z," a/k/a "Zem," MICHAEL DANILOVICH, a/k/a "Mike
Daniels," a/k/a "Fat Mike," a/k/a "Mike D," YURIY ZAYONTS, a/k/a
"KGB," MIKHAIL KREMERMAN, MATTHEW CONROY, MICHAEL BARUKHIN, a/k/a
"Barkin," a/k/a "Mike B," MIKHAIL OSTRUMSKY, a/k/a "Skinny Mike,"
BORIS TREYSLER, a/k/a "Borya," ANDREY ANIKEYEV, VLADIMIR
GRINBERG, VLADISLAV ZARETSKIY, YEVGENIY SHUMAN, a/k/a "Eugene,"
a/k/a "Lokh," and DMITRY SLOBODYANSKY, a/k/a "Dima," the
defendants, and others known and unknown, knowing that the
property involved in a financial transaction represented the
proceeds of unlawful activity, would and did conduct and attempt
to conduct financial transactions which in fact involved the
proceeds of specified unlawful activity, to wit, health care
fraud, mail fraud and conspiracy to commit health care fraud and

mail fraud, in violation of Title 18, United States Code,
Sections 1341, 1347 and 1349, with the intent to promote the
carrying on of that specified unlawful activity, in violation of
Title 18, United States Code, Section 1956(a)(1)(A)(i).

      32.   It was a further part and an object of the
conspiracy that MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a
"Russian Mike," a/k/a "Mike Z," a/k/a "Zem," MICHAEL DANILOVICH,
a/k/a "Mike Daniels," a/k/a "Fat Mike," a/k/a "Mike D," YURIY
ZAYONTS, a/k/a "KGB," MIKHAIL KREMERMAN, MATTHEW CONROY, MICHAEL
BARUKHIN, a/k/a "Barkin," a/k/a "Mike B," MIKHAIL OSTRUMSKY,
a/k/a "Skinny Mike," BORIS TREYSLER, a/k/a "Borya," ANDREY
ANIKEYEV, VLADIMIR GRINBERG, VLADISLAV ZARETSKIY, YEVGENIY
SHUMAN, a/k/a "Eugene," a/k/a "Lokh," and DMITRY SLOBODYANSKY,
a/k/a "Dima," the defendants, and others known and unknown,
knowing that the property involved in a financial transaction
represented the proceeds of unlawful activity, would and did
conduct and attempt to conduct financial transactions which in
fact involved the proceeds of specified unlawful activity, to
wit, health care fraud, mail fraud and conspiracy to commit
health care fraud and mail fraud, in violation of Title 18,
United States Code, Sections 1341, 1347 and 1349, knowing that
the transactions were designed in whole and in part to conceal
and disguise the nature, location, source, ownership, and control

of these proceeds of specified unlawful activity, in violation of
Title 18, United States Code, Section 1956(a)(1)(B)(i).

33. It was further a part and an object of the
conspiracy that MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a
"Russian Mike," a/k/a "Mike Z," a/k/a "Zem," MICHAEL DANILOVICH,
a/k/a "Mike Daniels," a/k/a "Fat Mike," a/k/a "Mike D," YURIY
ZAYONTS, a/k/a "KGB," MIKHAIL KREMERMAN, MATTHEW CONROY, MICHAEL
BARUKHIN, a/k/a "Barkin," a/k/a "Mike B," MIKHAIL OSTRUMSKY,
a/k/a "Skinny Mike," BORIS TREYSLER, a/k/a "Borya," ANDREY
ANIKEYEV, VLADIMIR GRINBERG, VLADISLAV ZARETSKIY, YEVGENIY
SHUMAN, a/k/a "Eugene," a/k/a "Lokh," and DMITRY SLOBODYANSKY,
a/k/a "Dima," the defendants, and others known and unknown, in an
offense involving and affecting interstate and foreign commerce
and taking place in the United States, would and did engage in
and attempt to engage in monetary transactions, as that term is
defined in Title 18, United States Code, Section 1957(f)(1), in
criminally derived property that was of a value greater than
$10,000, including the payment by check of funds in excess of
$10,000 from bank accounts that received no-fault insurance funds
to other bank accounts controlled by the defendants, such
property having been derived from a specified unlawful activity,
to wit, proceeds from health care fraud and mail fraud and
conspiracy to commit health care fraud and mail fraud, in
violation of Title 18, United States Code, Sections 1341, 1347

and 1349, all in violation of Title 18, United States Code, Section 1957.

(Title 18, United States Code, Section 1956(h)).

<u>Forfeiture Allegation As to Count One</u>

(Racketeering Conspiracy)

34.    As a result of committing the Racketeering offense alleged in Count One, MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a "Russian Mike," a/k/a "Mike Z," a/k/a "Zem," MICHAEL DANILOVICH, a/k/a "Mike Daniels," a/k/a "Fat Mike," a/k/a "Mike D," YURIY ZAYONTS, a/k/a "KGB," MIKHAIL KREMERMAN, MATTHEW CONROY, MICHAEL BARUKHIN, a/k/a "Barkin," a/k/a "Mike B," MIKHAIL OSTRUMSKY, a/k/a "Skinny Mike," BORIS TREYSLER, a/k/a "Borya," the defendants, shall forfeit, pursuant to Title 18, United States Code, Section 1963:

a.    all interests acquired and maintained in violation of Title 18, United States Code, Section 1962;

b.    all interests in, securities of, claims against, and property and contractual rights of any kind affording a source of influence over, the enterprise named and described herein which the defendants established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

c.    all property constituting and derived from

26

proceeds obtained, directly and indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962.

35.    The property subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963, includes, but is not limited to at least $110 million, which represents the total of the interests acquired and the gross proceeds obtained through the violation of Title 18, United States Code, Section 1962.

36.    Pursuant to Title 18, United States Code, Section 1963(m), MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a "Russian Mike," a/k/a "Mike Z," a/k/a "Zem," MICHAEL DANILOVICH, a/k/a "Mike Daniels," a/k/a "Fat Mike," a/k/a "Mike D," YURIY ZAYONTS, a/k/a "KGB," MIKHAIL KREMERMAN, MATTHEW CONROY, MICHAEL BARUKHIN, a/k/a "Barkin," a/k/a "Mike B," MIKHAIL OSTRUMSKY, a/k/a "Skinny Mike," BORIS TREYSLER, a/k/a "Borya," the defendants, shall forfeit substitute property up to the value of the property described in the previous paragraph if that property, as a result of any act or omission of the defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

        c.   has been placed beyond the jurisdiction of this Court;

        d.   has been substantially diminished in value; or

        e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 1963(m) to seek forfeiture of any other property of the said defendants up to the value of the forfeitable property.

    37.   The above-named defendants are jointly and severally liable for the forfeiture allegations alleged above.

    (All in accordance with Title 18, United States Code,
Section 1963.)

## Forfeiture Allegation As to Count Two

### (Health Care Fraud Conspiracy)

    38.   As a result of committing the federal health care fraud offense charged in Count Two of this Indictment, MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a "Russian Mike," a/k/a "Mike Z," a/k/a "Zem," MICHAEL DANILOVICH, a/k/a "Mike Daniels," a/k/a "Fat Mike," a/k/a "Mike D," YURIY ZAYONTS, a/k/a "KGB," MIKHAIL KREMERMAN, MATTHEW CONROY, MICHAEL BARUKHIN, a/k/a "Barkin," a/k/a "Mike B," MIKHAIL OSTRUMSKY, a/k/a "Skinny Mike," BORIS TREYSLER, a/k/a "Borya," ANDREY ANIKEYEV, VLADIMIR GRINBERG, VLADISLAV ZARETSKIY, YEVGENIY SHUMAN, a/k/a "Eugene,"

a/k/a "Lokh," a/k/a "Zhenya," DMITRY SLOBODYANSKY, a/k/a "Dima,"
ALEXANDER SANDLER, a/k/a "Sasha," a/k/a "Nose," GREGORY MIKHALOV,
MICHAEL MORGAN, MARK DANILOVICH, JEFFREY LEREAH, DMITRY LIPIS,
a/k/a "Dima," a/k/a "Danny," LYNDA TADDER, MARIA DIGLIO, SOL
NAIMARK, SERGEY GABINSKY, TATYANA GABINSKAYA, JOSEPH VITOULIS,
LAURETTA GRZEGORCZYK, a/k/a "Dr. G," EVA GATEVA, ZUHEIR SAID,
DAVID THOMAS, a/k/a "David Sanni Thomas," BILLY GERIS, MARK
SHAPIRO, ROBERT DELLA BADIA, MICHELLE GLICK, PAVEL POZNANSKY,
a/k/a "Paul," CHAD GREENSHNER, and CONSTANTINE VOYTENKO, the
defendants, pursuant to Title 18, United States Code, Section
982(a)(7), shall forfeit all property, real and personal, that
constitutes or is derived, directly and indirectly, from gross
proceeds traceable to the commission of the offense charged in
Count Two of this Indictment, including but not limited to at
least $110 million in United States currency, in that such sum in
aggregate is property representing the amount of proceeds
obtained as a result of the health care fraud conspiracy offense.

<u>Substitute Asset Provision</u>

39. If any of the above-described forfeitable
property, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due
diligence;

b.   has been transferred or sold to, or deposited
with, a third party;

29

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the said defendants up to the value of the forfeitable property.

(Title 18, United States Code, Section 982; and Title 21, United States Code, Section 853.)

Forfeiture Allegation As To Count Three

(Mail Fraud Conspiracy)

40.   As a result of committing the mail fraud conspiracy offense charged in Count Three of this Indictment, MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a "Russian Mike," a/k/a "Mike Z," a/k/a "Zem," MICHAEL DANILOVICH, a/k/a "Mike Daniels," a/k/a "Fat Mike," a/k/a "Mike D," YURIY ZAYONTS, a/k/a "KGB," MIKHAIL KREMERMAN, MATTHEW CONROY, MICHAEL BARUKHIN, a/k/a "Barkin," a/k/a "Mike B," MIKHAIL OSTRUMSKY, a/k/a "Skinny Mike," BORIS TREYSLER, a/k/a "Borya," ANDREY ANIKEYEV, VLADIMIR GRINBERG, VLADISLAV ZARETSKIY, YEVGENIY SHUMAN, a/k/a "Eugene," a/k/a "Lokh," a/k/a "Zhenya," DMITRY SLOBODYANSKY, a/k/a "Dima," ALEXANDER SANDLER, a/k/a "Sasha," a/k/a "Nose," GREGORY MIKHALOV,

30

MICHAEL MORGAN, MARK DANILOVICH, JEFFREY LEREAH, DMITRY LIPIS, a/k/a "Dima," a/k/a "Danny," LYNDA TADDER, MARIA DIGLIO, SOL NAIMARK, SERGEY GABINSKY, TATYANA GABINSKAYA, JOSEPH VITOULIS, LAURETTA GRZEGORCZYK, a/k/a "Dr. G," EVA GATEVA, ZUHEIR SAID, DAVID THOMAS, a/k/a "David Sanni Thomas," BILLY GERIS, MARK SHAPIRO, ROBERT DELLA BADIA, MICHELLE GLICK, PAVEL POZNANSKY, a/k/a "Paul," CHAD GREENSHNER, and CONSTANTINE VOYTENKO, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United Sates Code, Section 2461(c), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the mail fraud conspiracy offense, including but not limited to at least $110 million in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the mail fraud conspiracy offense.

<u>Substitute Asset Provision</u>

41.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

     c.   has been placed beyond the jurisdiction of the court;

     d.   has been substantially diminished in value; or

     e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the said defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

### Forfeiture Allegation As To Count Four

(Money Laundering Conspiracy)

42.   As a result of committing the money laundering conspiracy offense charged in Count Four of this Indictment, MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a "Russian Mike," a/k/a "Mike Z," a/k/a "Zem," MICHAEL DANILOVICH, a/k/a "Mike Daniels," a/k/a "Fat Mike," a/k/a "Mike D," YURIY ZAYONTS, a/k/a "KGB," MIKHAIL KREMERMAN, MATTHEW CONROY, MICHAEL BARUKHIN, a/k/a "Barkin," a/k/a "Mike B," MIKHAIL OSTRUMSKY, a/k/a "Skinny Mike," BORIS TREYSLER, a/k/a "Borya," ANDREY ANIKEYEV, VLADIMIR GRINBERG, VLADISLAV ZARETSKIY, YEVGENIY SHUMAN, a/k/a "Eugene," a/k/a "Lokh," and DMITRY SLOBODYANSKY, a/k/a "Dima," the

defendants, shall forfeit to the United States of America, pursuant to Title 18, United States Code, 982(a)(1), any property, real and personal, involved in such offense, and any property traceable to such property, including but not limited to at least $110 million in United States currency, in that such sum in aggregate is property representing the property involved in the offense, and traceable to such property.

<u>Substitute Asset Provision</u>

43.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b) and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the said defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 982; and
Title 21, United States Code, Section 853.)

FOREPERSON

PREET BHARARA
United States Attorney

34

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v. -

MIKHAIL ZEMLYANSKY, a/k/a "Mike Zemlin," a/k/a "Russian Mike," a/k/a "Mike Z," a/k/a "Zem," MICHAEL DANILOVICH, a/k/a "Mike Daniels," a/k/a "Fat Mike," a/k/a "Mike D," YURIY ZAYONTS, a/k/a "KGB," MIKHAIL KREMERMAN, MATTHEW CONROY, MICHAEL BARUKHIN, a/k/a "Barkin," a/k/a "Mike B," MIKHAIL OSTRUMSKY, a/k/a "Skinny Mike," BORIS TREYSLER, a/k/a "Borya," ANDREY ANIKEYEV, VLADIMIR GRINBERG, VLADISLAV ZARETSKIY, YEVGENIY SHUMAN, a/k/a "Eugene," a/k/a "Lokh," a/k/a "Zhenya," DMITRY SLOBODYANSKY, a/k/a "Dima," ALEXANDER SANDLER, a/k/a "Sasha," a/k/a "Nose," GREGORY MIKHALOV, MICHAEL MORGAN, MARK DANILOVICH, JEFFREY LEREAH, DMITRY LIPIS, a/k/a "Dima," a/k/a "Danny," LYNDA TADDER, MARIA DIGLIO, SOL NAIMARK, SERGEY GABINSKY, TATYANA GABINSKAYA, JOSEPH VITOULIS, LAURETTA GRZEGORCZYK, a/k/a "Dr. G," EVA GATEVA, ZUHEIR SAID, DAVID THOMAS, a/k/a "David Sanni Thomas," BILLY GERIS, MARK SHAPIRO, ROBERT DELLA BADIA, MICHELLE GLICK, PAVEL POZNANSKY, a/k/a "Paul," CHAD GREENSHNER, and CONSTANTINE VOYTENKO,

Defendants.

### SUPERSEDING
### INDICTMENT

S1 12 Cr. 171 (JPO)

(18 U.S.C. §§ 1341, 1347, 1349, 1956,
1967, 1962(d).)

### PREET BHARARA
United States Attorney.

### A TRUE BILL

_____
Foreperson.

2/28/12 - Filed Sealed Superseding Indictment. Arrest warrants issued.

2/28/2012

J. KATZ
U.S. MJ.