UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                                  :
UNITED STATES OF AMERICA                                          :
                                                                  :
    - v. -                                       S1 12 Cr. 171 (JPO)
                                                                  :
MICHAEL BARUKHIN,                                                 
   a/k/a "Barkin,"                                 :
   a/k/a "Mike B,"                                 
                                                                  :
   Defendant.                                      
                                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MICHAEL BARUKHIN'S MOTION TO SUPPRESS

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

DANIEL S. GOLDMAN
EDWARD Y. KIM
DANIEL S. NOBLE
Assistant United States Attorneys
   - Of Counsel -

## PRELIMINARY STATEMENT

The Government respectfully submits this Memorandum of Law in response to the motion of defendant Michael Barukhin (the "defendant"), and in advance of the hearing scheduled for May 2, 2013.  The defendant moves to suppress the evidence seized pursuant to the search of his apartment on February 29, 2012, following his arrest on the same day.  Notwithstanding the fact that the defendant consented, in writing, to the search of his apartment, he now claims that the evidence must be suppressed because he did not voluntarily sign the waiver or consent to the search of his apartment.

The defendant asserts that his written consent to search his apartment was involuntary and therefore void.  The Government emphatically disputes the defendant's arguments.  At the May 2, 2013 hearing, the Government will present competent evidence demonstrating that the defendant knowingly, voluntarily, and without coercion, consented to the search of his apartment.  After the hearing, the Government will urge the Court to deny the defendant's motion to suppress in full.

## BACKGROUND

On February 28, 2012, a grand jury sitting in this District returned a superseding indictment, S1 12 Cr. 171 (the "Indictment"), finding probable cause to charge the defendant in four counts: (1) racketeering conspiracy, *see* 18 U.S.C. § 1962(d); (2) conspiracy to commit health care fraud, *see* 18 U.S.C. § 1349; (3) conspiracy to commit mail fraud, *see* 18 U.S.C. § 1349; and (4) conspiracy to commit money laundering, *see* 18 U.S.C. § 1956(h).  All four counts relate to crimes committed by the defendant and other individuals in connection with a complex and widespread scheme to fraudulently bill insurance companies for the provision of medical services to automobile accident victims under New York's no-fault insurance laws.

On February 29, 2012, the defendant was arrested at his apartment located at 300 E. 62nd Street, Unit 1001, in New York, New York (the "Apartment") by four Special Agents from the Federal Bureau of Investigation ("FBI"), three New York City Police Department ("NYPD") Task Force Officers and two United States Deputy Marshals. The Government expects that the evidence introduced at the hearing will show that the agents arrived at the Apartment at approximately 6:00 a.m. and knocked on the door. The agents identified themselves as law enforcement. When the defendant opened the door, he was arrested and placed in handcuffs. After conducting a security sweep, the agents took the defendant to his bedroom and sat him on the bed. The agents advised the defendant of their identities, the nature of the charges, and his *Miranda* rights. The defendant did not make any statements. The agents permitted the defendant to get dressed and to use the restroom, all of which took approximately 30 minutes.

An FBI Special Agent and an NYPD Task Force Officer transported the defendant by car to the FBI New York Office arrest processing center located at Ft. Hamilton, Brooklyn. At the processing center, the defendant's pedigree information, fingerprints, photographs, and a DNA swab were taken. A Pretrial Services Officer also interviewed the defendant. After the defendant was processed, he was asked by an FBI Special Agent whether he would consent to a search of the Apartment. The agent provided the defendant with a written FD-26 "Consent to Search" Form, which stated, among other things, that the defendant had been advised of his "right to refuse consent" and that the defendant was giving his permission to search "voluntarily." The defendant read and signed the consent form. During the subsequent search of the Apartment, FBI agents found, among other things, multiple checkbooks for certain medical professional corporations ("PCs") involved in the health care fraud scheme; debit cards

in the names of the PCs and the incorporating doctor of those PCs; signature stamps of nominal doctor-owners of the PCs; several electronic data storage devices; and various documents.

The defendant now moves to suppress the evidence found in the Apartment on the ground that the defendant's consent was involuntary. Although the Government does not believe that the defendant's affidavit sufficiently supports his motion under the case law in this Circuit, the Government consents to a factual hearing on the defendant's motion in order to clarify the record and make abundantly clear that his consent was not the result of force or coercion. At the hearing, the Government expects that credible evidence will demonstrate that the defendant voluntarily consented to the search of the Apartment, contrary to the claim in his motion.

## ARGUMENT

I. The Search of the Defendant's Apartment

A. Applicable Law

"It is . . . well settled that one of the specifically established exceptions to the [Fourth Amendment] requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 219 (1973). "[T]he consent to search should be deemed valid if, given the totality of the surrounding circumstances, the consent was voluntarily given, and not the product of duress or coercion." *United States* v. *Kon Yu-Leung,* 910 F.2d 33, 41 (2d Cir. 1990) (citing *Schneckloth*, 412 U.S. at 226-27). The threshold for finding consent to be involuntary is exceedingly high; consent is deemed voluntary unless an individual's "will has been overborne and his capacity for self-determination critically impaired." *Schneckloth*, 412 U.S. at 225. The Government bears the burden of proving by a preponderance of the evidence that the consent was voluntary. *See United States* v. *Snype*, 441 F.3d 119, 131 (2d Cir. 2006).

Whether consent was voluntary is "a question of fact to be determined from all the circumstances." *Schneckloth*, 412 U.S. at 248-49. The standard for evaluating a defendant's consent is "'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect? Thus, 'the Fourth Amendment is satisfied when, under the circumstances, it is objectively reasonable for the officer to believe that the scope of the suspect's consent permitted him to conduct the search that was undertaken.'" *United States* v. *Garcia*, 56 F.3d 418, 423 (2d Cir. 1995) (quoting *Florida* v. *Jimeno*, 500 U.S. 248, 251 (1991)) (internal quotation marks, brackets, and citations omitted). Factors pertinent to the *Schneckloth* totality of the circumstances voluntariness test include "age, education, intelligence, length of detention, use of physical punishments or deprivations, and whether the alleged consenting person was advised of his constitutional rights." *United States* v. *Puglisi*, 790 F.2d 240, 243 (2d Cir. 1986) (citing *Schneckloth*, 412 U.S. at 226); *accord United States* v. *Todd*, No. 12 Cr. 45 (RJS), 2013 WL 499857, at *6 (S.D.N.Y. Jan. 28, 2013). An assessment of the voluntariness of the defendant's consent must "reflect[] a careful scrutiny of all the surrounding circumstances," as opposed to "the presence or absence of a single controlling criterion." *Schneckloth*, 412 U.S. at 226.

The mere fact that an individual was under arrest is not dispositive. *See United States* v. *Watson*, 423 U.S. 411, 424 (1976) ("[T]he fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search."); *accord United States* v. *Snype*, 441 F.3d at 131 ("[T]he fact that a person is in custody or has been subjected to a display of force does not automatically preclude a finding of voluntariness."); *United States* v. *Valencia*, 645 F.2d 1158, 1165 (2d Cir. 1980) ("There was no coercion other than that inherently arising from the fact of [the defendant's] arrest, which is itself insufficient to demonstrate that the

4

consent was coerced."). Nor does a finding of coercion follow from the fact that the agents drew their guns or that an individual was handcuffed. *See United States* v. *Ansaldi*, 372 F.3d 118, 129 (2d Cir. 2004) ("The fact that police drew their guns to effectuate the arrest does not necessarily establish coercion, neither does the fact that [the defendant] was handcuffed."); *United States* v. *Crespo*, 834 F.2d 267, 271-72 (2d Cir. 1987) ("That [the defendant] was under arrest and in custody, or even handcuffed, does not as a matter of law require a finding of coercion."). "[I]n cases where consent is obtained from a person in custody, . . . whether guns were drawn or the consenting individual was frisked, or whether the consenting individual was threatened, was in a public area, or was informed that he had the option of refusing consent to the search, are simply relevant factors in determining the voluntariness of the consent." *Puglisi*, 790 F.2d at 243-44 (citations omitted).

"Notably, the Second Circuit has repeatedly held that a statement by a government agent or law enforcement offer indicating that, absent consent, the government would obtain a search warrant, does not render the subsequent consent invalid, coerced, or involuntary." *Todd*, 2013 WL 499857, at *7. *See, e.g.*, *United States* v. *Calvente*, 722 F.2d 1019, 1023 (2d Cir. 1983) ("[A]dvising a person of the fact that a search warrant can be obtained does not constitute coercion."); *United States* v. *Vasquez*, 638 F.2d 507, 528–29 (2d Cir. 1980) (explaining that "the fact that an officer states that a search warrant can be obtained does not necessarily constitute a coercive factor negating consent" and that the Second Circuit "has upheld a finding of consent in circumstances where officers stated that they could apply for a warrant and would 'no doubt' obtain one"); *United States* v. *Faruolo*, 506 F.2d 490, 492, 495 (2d Cir. 1974) (upholding finding of consent in circumstances where agent stated that if the defendant "did not consent, a search warrant would be applied for" and further "conveyed his

belief that one would be issued"); *United States* v. *Lace*, 669 F.2d 46, 52 (2d Cir. 1982) (upholding finding that a defendant's "belief in the inevitability of a search warrant, a justifiable belief under the circumstances, did not preclude a finding that his consent was voluntary").

Accordingly, district courts in this Circuit have found that an individual's consent was voluntary notwithstanding a truthful statement by an agent that a search warrant would be obtained absent consent. *See, e.g.*, *Todd*, 2013 WL 499857, at *8 ("The fact that [the agent] told [an individual] that the agents could get a search warrant if she did not consent is insufficient to vitiate her consent because there are no allegations of deceit or trickery, and [the agent] did not say anything to [the individual] that he knew to be untrue."); *United States* v. *Peña Ontiveros*, 547 F. Supp. 2d 323, 331 (S.D.N.Y. 2008) ("[C]onsent to a search has been held to be valid where six federal agents were present in the home and the individual was told that the agents would stay there until a warrant was obtained."); *United States* v. *Memoli*, 333 F. Supp. 2d 233, 237–38 (S.D.N.Y. 2003) (finding that defendant's consent was voluntary where law enforcement officers truthfully told defendant, prior to consent, that a warrant would be obtained absent a consent to search).

Although the Government has no affirmative obligation to advise an individual of his or her right to refuse consent to search, *see United States* v. *Drayton*, 536 U.S. 194, 206-07 (2002) ("The Court has rejected in specific terms the suggestion that police officers must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search."), the provision of such a warning weighs in favor of a finding of voluntariness, *see, e.g.*, *Puglisi*, 790 F.2d at 243 (upholding finding of voluntariness where defendant signed consent form "after he was informed by one of the agents that he did not have to consent to a search"). "While knowledge of the right to refuse consent is one factor to be taken into account, the

government need not establish such knowledge as the *sine qua non* of an effective consent." *Schneckloth*, 412 U.S. at 227; *see also Garcia*, 56 F.3d at 422-23 ("[K]nowledge of the right to refuse consent is not a requirement of a finding of voluntariness, although it may be a factor in ascertaining whether the consent was coerced." (citation omitted)).  As the Second Circuit explained in *Garcia*, it is "well established that the concept of knowing and intelligent waiver, which is strictly applied to rights involving a fair criminal trial, does not govern in the Fourth Amendment context.  This is so because the Fourth Amendment prohibits not all searches and seizures, but only those that are 'unreasonable.'"  *Garcia*, 56 F.3d at 422 (citations omitted).  Similarly, the fact that an individual was warned of his *Miranda* rights also weighs in favor of a finding of voluntariness.  *See, e.g.*, *Kon Yu-Leung*, 910 F.2d at 41; *Puglisi*, 790 F.2d at 244.

  **B.**  **Discussion**

    The Government expects the evidence at the hearing to establish that, based on the totality of the circumstances, the defendant voluntarily consented to the search of the Apartment before it was searched by FBI agents.  Nothing about the defendant's age, mental abilities, education, or any other circumstance surrounding his arrest rendered his consent involuntary.  Furthermore, the evidence will show that the agents advised the defendant of his *Miranda* rights (at least once) after his arrest and further advised him that he had the right to refuse consent to search his apartment.  After receiving these warnings, the defendant signed the written consent form, specifically acknowledging that he was giving permission to search "voluntarily."

    Contrary to the defendant's allegations, *see* Affidavit of Michael Barukhin ("Barukhin Aff.") ¶¶ 10-11, the credible evidence introduced at the hearing will make clear that the defendant was not threatened or coerced by the agents during his arrest or subsequent

7

processing. Indeed, as the defendant himself acknowledges, he made no statements to the agents and was permitted to get dressed and use the restroom without handcuffs. *See id.* at ¶¶ 4-5. Even if, as the defendant alleges, some agents had "guns drawn" when the defendant first opened the door of the Apartment around 6:00 a.m., *id.* at ¶ 2, the defendant does not allege that any agent had a gun drawn when the defendant signed the consent form hours later at a different location. *See, e.g.*, *Todd*, 2013 WL 499857, at *8 ("[E]ven assuming *arguendo* that the officers *had* their guns raised when [the individual] answered the door, that fact alone would be insufficient to vitiate her consent[.]" (citing *Snype*, 441 F.3d at 126–27, 130–37; *Ansaldi*, 372 F.3d at 129) (emphasis in original)).

      Further, as well-settled case law makes clear, the fact that the defendant had been arrested, placed in handcuffs, and held for routine processing is insufficient to render his consent involuntary. *See Watson*, 423 U.S. at 424; *Snype*, 441 F.3d at 131; *Crespo*, 834 F.2d at 271-72. Indeed, it was for public safety reasons that the defendant had one arm handcuffed to a chair, as did all of the other defendants at the arrest processing facility. The same result obtains with respect to the defendant's allegation, *see* Barukhin Aff. ¶ 10, that an agent told him that the Government would obtain a search warrant for the Apartment absent his consent. *See Calvente*, 722 F.2d at 1023; *Todd*, 2013 WL 499857, at *8. Moreover, the defendant's own subjective beliefs and interpretations of the agents' conduct, *see* Barukhin Aff. ¶¶ 12 & 14, are irrelevant to the *objective* reasonableness of the agent's actions. *See Garcia*, 56 F.3d at 423. Thus, even if the allegations in the defendant's affidavit are true – which many are not – his consent was voluntary according to the well-settled case law in this Circuit.[1]

---

[1] It is of no moment to the question at issue here – whether the defendant voluntarily gave consent to search the Apartment – that the agents seized an expensive watch that was in plain view in the Apartment. *See generally Minnesota* v. *Dickerson*, 508 U.S. 366, 375 (1993)

In short, the defendant's demeanor and conduct gave the FBI agents every reason to believe that he understood what was going on and that his consent was voluntary. Moreover, the inquiring agents' conduct was not only objectively reasonable, but altogether proper and correct. Accordingly, the totality of the facts and circumstances, as will be adduced at the hearing, make clear that the defendant voluntarily consented to the search of the Apartment by FBI agents.

## CONCLUSION

For the foregoing reasons, the Government submits that after a hearing, the defendant's motion to suppress should be denied.

Dated:    New York, New York
          April 26, 2013

                                            Respectfully submitted,

                                            PREET BHARARA
                                            United States Attorney
                                            Southern District of New York

                                        By: _____
                                            Daniel S. Goldman
                                            Edward Y. Kim
                                            Daniel S. Noble
                                            Assistant United States Attorney
                                            Southern District of New York
                                            (212) 637-2289/2401/2239

---

("Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant."); *accord United States* v. *Rudaj*, 390 F. Supp. 2d 395, 402 (S.D.N.Y. 2005) (Cote, *J.*). In any event, as the defendant's motion makes clear, the Government ultimately agreed with the defendant's version of events and returned the watch to him. *See* Barukhin Mot. at 6 n.15.

**CERTIFICATE OF SERVICE**

       I, Daniel S. Noble, Assistant United States Attorney for the Southern District of New York, hereby certify that on April 26, 2013, I caused a copy of the foregoing Government's Memorandum of Law in Opposition to Defendant Michael Barukhin's Motion to Suppress to be delivered by electronic mail and ECF upon the following:

    Barry Bohrer, Esq.
    Schulte Roth & Zabel LLP
    919 Third Avenue
    New York, NY 10022

Dated:    New York, New York
           April 26, 2013

                                                      _____
                                                      Daniel S. Noble
                                                      Assistant United States Attorney
                                                      (212) 637-2239